WAMPOLE (DALLAM v.).  See Case No. 3,-543.

## Case No. 17,138.

### The WANATA.

[4 Ben. 310.][1]

District Court, S. D. New York.  Oct., 1870.[2]

COLLISION OFF BARNEGAT—PILOT BOAT AT ANCHOR—LIGHTS—ANCHOR WATCH.

1. A pilot boat, at anchor, is not required to show a white light at her masthead, and a flare-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court. Case unreported. Decree of circuit court affirmed by supreme court in 95 U. S. 600.]

up light every fifteen minutes, as required by the 8th article of the rules for preventing collisions (13 Stat. 58), but must show the white light in a globular lantern, provided for by the 7th article.

2. A pilot boat was at anchor off Barnegat, showing a proper light, but having no watch on deck. She was run into by a schooner which was running in, under shortened sail, to anchor, the wind being so violent that the schooner was unable to keep her own side lights burning. *Held*, that the schooner was in fault in not keeping a vigilant lookout, and that the absence of an anchor watch on the pilot boat, under the circumstances, was not a fault contributing to the collision.

[Cited in The Lady Franklin, Case No. 7,-984.]

In admiralty.

Beebe, Donohue & Cooke, for libellants.
J. H. Choate, for claimants.

BLATCHFORD, District Judge. This is a libel filed against the schooner Wanata, to recover for the damages caused to the libellants by the sinking and total loss of the pilot boat Josiah Johnson, and of certain clothing and other property on board of her, through a collision which occurred between the two vessels, about 9 o'clock p. m., on the 6th of March, 1869. The amount of damages claimed is $23,000. The libellant Johnson was the owner of the pilot boat, and the other libellants were the owners of such clothing and other property. The Wanata was on a voyage from New York to Charleston. The pilot boat was at anchor, off the coast of New Jersey, in the Atlantic Ocean, about half a mile from the shore, in four fathoms of water, about from 15 to 20 miles north of Barnegat light. The wind was very strong from the north-west. The pilot boat was struck on her starboard side by the stem of the Wanata, and sank in a very few minutes. She had on board thirteen persons, all told, six of whom were pilots. Of these thirteen, eleven have been produced as witnesses for the libellants. The pilot boat had come to anchor because she had split her foresail. The libellants insist that the collision happened through the fault of those on board of the Wanata, in not keeping a proper lookout, and in sailing at too great a rate of speed. The claimants insist that the collision was caused by the negligence of those on board of the pilot boat, in anchoring in an improper place, in not exhibiting a proper light, and in not keeping a proper watch on her deck.

The claimants fail to show that the pilot boat was anchored in an improper place. As to the light on the pilot boat, I am satisfied, on the evidence, that she exhibited such a light as is prescribed by article 7 of the statutory regulations (Act April 29, 1864; 13 Stat. 58) for a vessel at anchor. It is insisted that she ought to have exhibited, not the white light in a globular lantern, provided by article 7, but a white light at the masthead, and a flare-up light every fifteen minutes, as prescribed for sailing pilot vessels by article 8. It is in-

sisted that article 8, in speaking of "sailing pilot vessels," means pilot vessels propelled by sails in contradistinction to pilot vessels propelled by steam, and that, as the pilot boat in this case was a vessel propelled by sails, she was bound to exhibit the lights prescribed by article 8, at all times, both while at anchor and while actually sailing, and that the provisions of article 7, as to the light to be exhibited by vessels at anchor, do not apply to her. It may be conceded, that the expression "sailing pilot vessels," in article 8, only includes pilot vessels propelled by sails, and yet it by no means follows that that article applies to such vessels while at anchor. In the first place, article 7 prescribes a light for all vessels at anchor. Article 8 does not speak of vessels at anchor; and the wording of all the articles in the statute shows clearly that article 8 was only intended to prescribe lights for sailing pilot vessels while under way. Whenever, in the statute, a light is prescribed as one to be borne and exhibited uninterruptedly in a fixed place by a vessel under way, it is spoken of as a light to be carried; and the word "carry" is not applied to a light that is to be shown by a vessel at anchor, or to a light that is to be shown otherwise than uninterruptedly by a vessel under way. When a light is spoken of, in the statute, as one to be shown by a vessel at anchor, or one to be shown otherwise than uninterruptedly by a vessel under way, the word used is "exhibit." In article 3, for seagoing steamships under way, in article 4, for steamships when towing other ships, and in article 5, for sailing ships under way or being towed, the word used is "carry." The vessels are supposed to be in motion and are to "carry" the lights prescribed, and such lights are to be visible uninterruptedly, and not to be exhibited at intervals only. But, when we come to article 6, which provides for "exceptional lights for small sailing vessels," when under way, and the side lights cannot be fixed so as to be carried where they will be visible uninterruptedly, they are required to be "exhibited" on the approach of or to other vessels. So, in article 7, the prescription in regard to vessels at anchor is, that they shall "exhibit" the prescribed light. In article 9, the provision is, that open fishing boats, and other boats, when under way, shall not be required to "carry" the colored side lights, but that, if they do not, the proper colored light shall be "exhibited" in the proper place, on the approach of or to other vessels, and that such boats, when at anchor or stationary at their nets, shall "exhibit" a bright white light. In consonance with this use, in articles 3, 4, 5, 6, 7, and 9, of the words referred to, we find, that, in article 8, the provision is, that "sailing pilot vessels shall not carry the lights required for other sailing vessels, but shall carry a white light at the masthead, visible all round the horizon, and shall also exhibit a flare-up light every fifteen minutes." The word "carry," as there used, intends a light

borne by the sailing pilot vessel while under way, and visible uninterruptedly; and the word "exhibit" intends a light on such vessel while under way, not visible uninterruptedly, but exhibited at prescribed intervals. There would seem to be a good reason for prescribing for a sailing pilot vessel, when under way, different lights from those prescribed for other sailing vessels when under way, but no good reason can be conceived for prescribing for a sailing pilot vessel when at anchor different lights from those prescribed for other sailing vessels when at anchor, especially in view of the fact, that article 7 prescribes one and the same light for all vessels at anchor, whether steamships or sailing ships. It is undoubtedly often convenient, and even necessary, for a vessel which desires to take a pilot from a pilot boat which is under way at sea, to approach so near to the pilot boat as to require the exercise of caution to prevent a collision between the two. Such approach may be made at night, and, for the pilot boat to carry and exhibit the lights prescribed by article 8, so as to distinguish her from other sailing vessels, would seem to be reasonable and useful, not only to indicate her character, but to guard against collision with her. But a pilot boat at anchor is presumptively not in the course of present service, not seeking employment for her pilots, and not to be approached by a vessel seeking a pilot. Hence, there is no necessity that she should, when at anchor, show a different light from that shown by every other vessel at anchor.

As to the question, whether, in fact, the pilot boat in this case exhibited, at and before the time of the collision, such a light as is prescribed by article 7, the clear weight of the evidence is that she did. In addition to all the other evidence, the witness Miller who had been on deck on the pilot boat continuously for an hour and ten minutes before the collision, and had gone below for his coat a moment before the collision, testified, that the light was burning brightly in the main peak halyard when he so went below, and that it had been so burning during the hour and ten minutes. Moreover, the light was seen before the collision, by those on board of the schooner, but at too late a moment to avoid the collision. It was in a proper place, 15 or 16 feet above the deck, and about 15 feet abaft the mainmast, the sails being all furled. Placed as it was, and with the pilot boat heading to the wind, it ought to have been seen by the approaching schooner. All the discrepancy, in the testimony, as to the position in which some of the witnesses saw the light after the collision, is owing to the fact that some of them looked at it from the higher position of the deck or bulwarks of the schooner, the pilot boat being lower in the water, and to the further fact, that its position was lowered by the canting aft of the mainmast, owing to the injury it received by the blow from the schooner.

It is clear, on the proofs, that the schooner

had no proper lookout, and that the collision was due to her negligence in that respect. A lookout stationed forward upon her, engaged diligently in searching for lights and vessels ahead, with his attention not distracted by other duties, would, undoubtedly, have seen the pilot boat's light in season to have enabled the schooner, by a change of helm, to avoid her, anchored as she was. Especially was this duty of keeping a vigilant watch, of the character indicated, incumbent upon the schooner on such a night, and in her existing predicament. The wind was so violent that she was unable to keep her own side lights burning, and she was running in, under shortened sail, to anchor under Barnegat. Still, her speed was considerable, and, having no lights to indicate to those on other vessels her approach, it was especially incumbent on her to watch closely for such other vessels.

In view of the fact that the pilot boat was at anchor, and exhibited a proper light, and that the schooner had no lights to·indicate her approach, it cannot be regarded as a fault on the part of the pilot boat, contributing to the collision, that no one of her company was on deck or on watch at and just before the collision.

There having been no fault on the part of the pilot boat, and the collision being caused by the fault of the schooner, there must be a decree for the libellants, with costs, with a reference to a commissioner to ascertain and report the damages sustained by the libellants.

[Affirmed by the circuit court, on appeal. Case unreported. Decree of circuit court affirmed by supreme court. 95 U. S. 600.]